**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LONG BEACH ROAD HOLDINGS, LLC

                    Plaintiff,                          **MEMORANDUM OF**
                                                        **DECISION & ORDER**
                -against-                               14-cv-1801 (ADS)(ARL)


FOREMOST INSURANCE COMPANY and
FAIRMONT INSURANCE BROKERS, LTD.,

                    Defendants.
----------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Nielsen, Carter & Treas, LLC**
*Attorneys for the Plaintiff*
3838 N. Causeway Boulevard, Suite 2850
Metairie, LA 70002
        By: Kim Tran Britt, Esq., Of Counsel

**Michael J. Khader P.C.**
*Attorney for the Plaintiff*
733 Yonkers Ave, Suite 200
Yonkers, NY 10704

**The Law Offices of Michael J. Mauro, Esq., P.C.**
*Attorney for the Plaintiff*
1 Raddison Plaza, 8th Flr.
New Rochelle, NY 10801

**Maroney O'Connor LLP**
*Attorneys for the Defendant Foremost Insurance Company*
11 Broadway, Suite 831
New York, NY 10004
        By: Michael Raymond Frittola, Esq.
            Ross T. Herman, Esq., Of Counsel

**Babchik & Young, LLP**
*Attorneys for the Defendant Fairmont Insurance Brokers, LTD.*
200 East Post Road
White Plains, NY 10601
        By: Jack Babchik, Esq.
            Jordan Sklar, Esq., Of Counsel

1

**SPATT, District Judge**.

On March 20, 2014, the Plaintiff Long Beach Road Holdings, LLC (the "Plaintiff") commenced this action seeking damages in connection with the decision by the Defendant Foremost Insurance Company ("Foremost") to deny coverage for flood-related damages to the Plaintiff's property sustained in Superstorm Sandy.

The Plaintiff asserts common law and New York State consumer law claims against the Defendant Foremost, the insurance carrier on the Plaintiff's Standard Flood Insurance Policy ("SFIP"), and the Defendant Fairmont Insurance Brokers, LTD. ("Fairmont"), the broker that helped to procure the SFIP for the Plaintiff.   In particular, the Plaintiff asserts: (i) breach of contract claims against both of the Defendants; (ii) a claim against Fairmont under section 349 of the New York General Business Law ("NYGBL") for allegedly deceptive and misleading consumer practices; and (iii) a negligence claim against Fairmont.

Presently before the Court is a motion by Fairmont pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b) to dismiss the claims against it.  For the reasons set forth below, Fairmont's motion is granted and the complaint is dismissed as against Fairmont.

## I. BACKGROUND

### A. Underlying Facts

Unless otherwise noted, the Court draws the following facts from the Plaintiff's complaint and construes them in the light most favorable to the Plaintiff.

#### 1. Write Your Own Insurance Program

As relevant to the instant dispute, Congress created the National Flood Insurance Program ("NFIP") by passing the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.* (Id. at ¶ 4.) The purpose of the statute was to provide adequate flood insurance in at-risk

areas by offering subsidized flood insurance. Id. at § 4001(b). On April 1, 1979, the Federal

Emergency Management Agency ("FEMA") became the agency responsible for operating the

NFIP. See 42 U.S.C. § 4071.

In 1983, FEMA created the Write Your Own ("WYO") Program, which gave insurance

companies the ability to issue SFIPs, under their own names as insurers, to individuals as fiscal

agents of the government. Fletcher v. Standard Fire Ins. Co., No. 13-CV-5463 (ADS), 2015 WL

248595, at *1 (E.D.N.Y. Jan. 17, 2015) (Spatt, J). Under the WYO program, "insurance

companies serve as administrators for the federal program, and it is the U.S. government, not the

companies, that pays the claims." Id. (citing McGair v. Am. Bankers Ins. Co. of Florida, 693

F.3d 94, 96 (1st Cir. 2012)). In addition, "FEMA provides a standard text for all NFIP policies

and forbids WYOP companies from making changes," and FEMA's interpretations of the policy

bind all WYOP participants." McGair, 693 F.3d 94, 96 (1st Cir. 2012) (quoting Downey v. State

Farm Fire & Cas. Co., 266 F.3d 675, 679 (7th Cir. 2001)).

**2. The Parties**

The Plaintiff is a New York limited liability company that maintains its principal place of

business in New Rochelle. (Compl. at ¶ 1.) The Plaintiff owned a commercial property located

in Island Park that was insured under the SFIP at issue in the present action. (Id.) The

commercial property contained a "commercial space apartment" and a dental office. (Id. Ex. A.)

Foremost is a private insurance company organized under the laws of the State of

Michigan and has its principal place of business in Grand Rapids, Michigan. (Id. at ¶ 2.)

Foremost is a WYO insurance carrier that issued the SFIP on the Plaintiff's Island Park property.

(Id. at ¶¶ 2, 11.) Foremost has not joined Fairmont's motion to dismiss presently before the

Court.

Fairmont is a New York Corporation that maintains its principal place of business in Brooklyn.  (<u>Id.</u> at ¶ 3.)  Fairmont is a licensed insurance brokerage company that the Plaintiff engaged to purchase insurance coverage for the Plaintiff on its Island Park property.  (<u>Id.</u> at ¶ 5.)

### 3. The SFIP and Damage to the Plaintiff's Property

Prior to October 1, 2012, the Plaintiff sought to obtain a first mortgage from Westchester Bank on its Island Park property.  (<u>Id.</u> at Ex. E.)  The loan was originally scheduled to close on October 25, 2012.  (<u>Id.</u>)

In an October 1, 2012 letter to the Plaintiff, Westchester Bank notified the Plaintiff that it was required to purchase flood insurance because the Island Park property had been re-categorized as in a flood zone under the NFIP.  (<u>Id.</u> at Ex. E.)

After receiving the letter, the Plaintiff retained Fairmont to procure flood insurance for the Plaintiff.  (<u>Id.</u> at ¶ 13.)  The Plaintiff does not clarify what date it allegedly entered into a broker agreement with Fairmont or what the agreement required of the parties.

According to the complaint, Fairmont had a "long relationship with [the] Plaintiff[] . . . in consulting" related to "commercial property coverage, assessment of risk, adequacy of coverage and the handling of claims."  (<u>Id.</u> at ¶ 12.)

On October 25, 2012, Foremost issued an SFIP to the Plaintiff providing for $450,000 in flood coverage.  (<u>Id.</u> at Ex. A.)  The complaint does not clarify what efforts Fairmont undertook as the Plaintiff's broker to procure a SFIP from Foremost.

On the same day, the Plaintiff sent a check to Foremost for $2,192 for the SFIP.  (<u>Id.</u> at Ex. B.)  In addition, Foremost sent the Plaintiff a document entitled, "Flood Policy Declarations." (<u>Id.</u> at Ex. A.)  The document defines the policy period as October 25, 2012 to October 25, 2013.  (<u>Id.</u>)  The document further states, "These Declarations are effective as of:

10/25/2012 at 12:01am" and that, "This Declaration Page, in conjunction with the policy, constitutes your Flood Insurance Policy." (Id.)

On October 25, 2012, Fairmont issued to the Plaintiff a certificate of insurance that indicated that the policy became effective on October 25, 2012. (Compl. at ¶ 23.)

On October 29, 2012, the Plaintiff's property was damaged as a result of flooding caused by SuperStorm Sandy. (Compl. at ¶ 18.)

The Plaintiff's mortgage transaction, which was originally scheduled to close on October 25, 2012, was delayed for unspecified reasons and closed on November 2, 2012. (Sklar Decl., Ex. C.) As a result, on November 2, 2012, Foremost sent the Plaintiff a document entitled, "Revised Declarations." (Id. at Ex. D.) The document listed the revised policy period as "11/02/2012 [t]o 11/02/2013." (Id.)

**4. The Claims Process**

The Plaintiff does not specify when it filed a claim for damages to its Island Park property. However, on December 3, 2012, Foremost sent the Plaintiff a check in the amount of $40,000 under the SFIP for damages caused to the Plaintiff's property by SuperStorm Sandy. (Compl. at Ex. E.)

On January 15, 2013, the Plaintiff submitted to Foremost a form entitled, "Proof of Loss," claiming a "net amount" of $262,205.78 in damages to his property. (Id. at Ex. C.)

In a March 25, 2013 letter to the Plaintiff, Carl Swafford ("Swafford"), a Lead Claims Examiner for Foremost, denied the Plaintiff's claim for two reasons. First, he denied coverage because "[t]he adjuster's final report and documents received indicates a loan closing did not occur on or prior to the Date of Loss." (Id. at Ex. E, at 1.) Swafford further noted that, "We do

5

not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date . . . [t]he policy term begins; or . . . coverage is added at your request." (<u>Id.</u> at 2)

Second, Swafford found that even if the loan had closed on October 25, 2012, the Plaintiff would still not have qualified for coverage because under the NFIP, new policies are subject to a 30 day waiting period before becoming effective. (<u>Id.</u> at 1.)

Finally, Swafford requested that the Plaintiff return to Foremost the $40,000 that it had previously issued to the Plaintiff. (<u>Id.</u> at 3.) Swafford noted that the Plaintiff could appeal her decision to FEMA within 60 days. (<u>Id.</u>)

On May 23, 2013, Joseph Spiezio ("Spiezio"), an employee of the Plaintiff, appealed Swafford's decision to FEMA. (Sklar Decl., Ex. B.) In his letter to FEMA, Spiezio asserted that the flood policy became effective on October 25, 2012, not November 2, 2012. He further stated that Fairmont "never disclosed . . . that there was a waiting period . . . . There was a total reliance by all parties that there was no waiting period." (<u>Id.</u>)

In an October 4, 2013 letter to the Plaintiff, Jhun de la Cruz ("Cruz"), a Branch Chief of Underwriting at FEMA, denied the Plaintiff's appeal of Foremost's decision to deny the Plaintiff coverage under the SFIP. (Sklar Decl., Ex. C.) Cruz noted that the NFIP Manual states, "Flood insurance that is initially purchased in connection with the making, increasing, extending, or renewal of a loan shall be effective at the time of loan closing, provided that the policy is applied for at or before closing." (<u>Id.</u>)

Cruz found that although Foremost issued a policy to the Plaintiff "with an effective date of October 25, 2012," "additional documentation provided indicates that the loan transaction actually took place on November 2, 2012." (<u>Id.</u>) As such, Cruz found that even if the thirty-day waiting period were waived, "the earliest the policy can be effective is November 2, 2012,"

which was several days after the Plaintiff suffered the "covered loss." (Id.) Accordingly, Cruz "concurred" with Foremost's final decision to deny the Plaintiff with coverage under the SFIP. (Id.)

## B. Procedural History

As stated previously, on March 20, 2014, the Plaintiff commenced this action against the Defendants Foremost and Fairmont. In particular, the Plaintiff asserts: (i) breach of contract claims against both of the Defendants; (ii) a claim against Fairmont under section 349 of the NYGBL for allegedly deceptive and misleading consumer practices; and (iii) a negligence claim against Fairmont.

In its present motion, Fairmont argues that the Plaintiff fails to state any viable claims against it, and therefore, the complaint should be dismissed as to Fairmont. For the following reasons, the Court agrees.

## II. DISCUSSION

## A. Legal Standards

In deciding a Rule 12(b)(6) motion to dismiss, the court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" Luna v. N. Babylon Teacher's Org., 11 F. Supp.3d 396, 400–401 (E.D.N.Y. 2014) (Spatt, J.) (quoting Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008)).

In addition, a plaintiff opposing a Rule 12(b)(6) motion must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id.; see also Luna, 11 F. Supp.3d at 400–401 ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

The Court notes that Fairmont attaches to its present motion three exhibits: (i) the Plaintiff's May 23, 2013 letter to FEMA appealing Foremost's denial of coverage; (ii) FEMA's October 4, 2013 letter to the Plaintiff affirming Foremost's denial of coverage; and (iii) revised declarations issued by Foremost referred to in FEMA's October 4, 2013 letter. (Sklar Decl., Exs. B–D.)

When considering a Rule 12(b)(6) motion, a court can generally "only consider the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (Spatt, J) (citing Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000)); see also Ahluwalia v. St. George's Univ., LLC, No. 14-CV-3312 ADS), 2014 WL 6674615, at *8 (E.D.N.Y. Nov. 25, 2014) (Spatt, J) ("Furthermore, in deciding a motion to dismiss, the Court is confined to 'the allegations contained within the four corners of [the] complaint.' . . . . This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.") (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998)).

The Court finds that the Plaintiff's claims arise, at least in part, from FEMA's decision to deny the Plaintiff's appeal of Foremost's decision to deny coverage under the SFIP for the losses sustained to its property. Accordingly, the Court finds that although the Plaintiff did not attach these documents to its complaint, the documents are "integral" to the complaint. Thus, the Court may consider them in deciding present motion. See, e.g., Leder v. Am. Traffic Solutions, Inc., No. 14-CV-103 (ADS), 2015 WL 332136, at *6 (E.D.N.Y. Jan. 24, 2015) (Spatt, J) ("[The plaintiff's] claims for liability arise, at least in part, from the [p]laintiff's receipt of the Notice of Liability. Thus, the Court finds that the [p]laintiff incorporated the January 10, 2011 Notice of Liability by reference to the complaint, and as such, the Court can consider it in deciding the present motion."); Azzolini v. Marriott Int'l, Inc., 417 F. Supp. 2d 243, 246 (S.D.N.Y. 2005) ("Although [the] plaintiff did not attach the employee handbook to his complaint, the plaintiff relied on the terms and effects of the employee handbook by referencing the progressive discipline policy as the policy that Marriott breached.").

However, the Court notes that the Fairmont also submitted with its present motion a declaration intended to support the facts alleged in its brief. Were the Court to consider this declaration it "would require credibility assessments and weighing of the evidence, which is not appropriate on a motion dismiss." Garnett-Bishop, 2014 WL 5822628, at *13; see also Johnson v. Levy, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) ("There is no basis for the Court to consider the affidavits of Jay Levy, Diane Levy, and Sue Campbell, the 51 Smith Street L.L.C. Operating Agreement, or the Johnsons' Credit Report, which are attached solely for the purpose of refuting the facts alleged in the complaint and would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss."). Accordingly, the Court will not consider Fairmont's declaration for purposes of the present motion.

Finally, the Plaintiff attaches to its opposition memorandum of law several pages from Fairmont's website. (James Decl., Ex. 1.) There is no basis for the Court to consider documents from Fairmont's website because the Plaintiff does not reference the website pages in its complaint, nor do the website pages appear to relate to the specific policy at issue in the instant case. Accordingly, the Court finds th**is** document inappropriate for consideration at the motion to dismiss stage. See Elmowitz v. Executive Towers at Lido, LLC, 571 F. Supp. 2d 370, 375 (E.D.N.Y. 2008) ("The [d]efendants submit a number of exhibits in conjunction with their motion to dismiss. However, the majority of these exhibits are inappropriate for a motion to dismiss, and would have been more appropriately filed in conjunction with a motion for summary judgment, in accordance with the rules of this [c]ourt.").

## B. Subject Matter Jurisdiction

As an initial matter the Court addresses whether it has subject matter jurisdiction over the Plaintiff's claims against both the Defendants. See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) ("It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress . . . . If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*.") (internal quotation marks and citations omitted).

'"The party invoking federal jurisdiction bears the burden of establishing that' jurisdiction exists." Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Where, as here, the case is at the pleading stage and no evidentiary hearings have been held, the Court must "accept as true all material facts alleged in the complaint and draw all reasonable inferences in

the plaintiff's favor." Id. (quoting Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir.2001)).

Subject matter jurisdiction may be premised on three bases: "(1) the parties' diversity of citizenship, (2) the implication of a federal question in the action, or, (3) for pendent claims asserted solely under state law against non-diverse parties, an independent basis for jurisdiction that is part of the same 'case or controversy' as the pendent claims." Ghartey v. Farnsworth, No. 08 CIV. 6682 (LAP), 2010 WL 199691, at *1 (S.D.N.Y. Jan. 11, 2010).

With respect to the first basis, diversity of citizenship jurisdiction under 28 U.S.C. § 1332 exists where, at the time that the action commenced, no plaintiff is domiciled in the same state as any defendant and the amount in controversy exceeds $75,000. The Plaintiff's complaint provides that the Plaintiff is a "limited liability [c]ompany organized under the laws of the State of New York and maintain an office at . . . New Rochelle." (Compl. at ¶ 1.) In determining the citizenship of limited liability companies, the Court looks to the citizenship of each of its members. See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012) ("[The] [d]efendant . . . is a limited liability company that takes the citizenship of each of its members.") (citation omitted); see also ICON MW, LLC v. Hofmeister, 950 F. Supp. 2d 544, 546 (S.D.N.Y. 2013) ("In particular, limited liability companies, like ICON, obtain citizenship from each of their members."). The Plaintiff does not set forth any allegations with respect to its structure or membership. As such, based on the record before it, the Court cannot determine the Plaintiff's citizenship, and thus, diversity of citizenship is not a proper basis of subject matter jurisdiction for its claims.

With respect to the second basis, district courts pursuant to 28 U.S.C. § 1331 have subject matter jurisdiction "over all civil actions arising under the [United States] Constitution and the

laws and treaties of the United States." Further, "[u]nder the 'well-pleaded complaint rule,' federal jurisdiction is present only if a question of federal law appears on the face of the plaintiff's 'well-pleaded complaint' — thus requiring a court to ignore any and all answers, defenses, and counterclaims." Sleppin v. Thinkscan.com, LLC, No. 14-CV-1387 (ADS), 2014 WL 5431352, at *3 (E.D.N.Y. Oct. 23, 2014) (quoting Fleet Bank, Nat'l Ass'n v. Burke, 160 F.3d 883, 886 (2d Cir. 1998)). In addition, federal question jurisdiction exists where "a well-pleaded complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (internal quotation marks and citation omitted); see also Williams v. Bank of New York Mellon Trust Co., No. 13-CV-6814 (SJF), 2015 WL 430290, at *4 (E.D.N.Y. Feb. 2, 2015) ("Federal courts have original federal question jurisdiction only where 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'") (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)).

As stated above, the Plaintiff asserts a claim against Foremost for breach of the SFIP. Courts have held that contract claims relating to an SFIP confer federal jurisdiction because (i) federal common law governs the interpretation of SFIPs; (ii) SFIPs are governed by flood insurance regulations established by FEMA; and (iii) a damage against a WYO company, such as Foremost, will come from federal funds, not from the WYO company. See, e.g., Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 608 (4th Cir. 2002) (finding a conversion claim to "necessarily depend on resolution of a substantial question of federal law" because the plaintiff's claim is "essentially a breach of contract claim with respect to [the Plaintiff's] SFIP, which

claim, as explained previously, is governed solely by federal law."); Bd. of Directors of Rough

Riders Landing Homeowners Ass'n, Inc. v. Signature Grp., LLC, 989 F. Supp. 2d 239, 242

(E.D.N.Y. 2013) ("[The plaintiff] asserts various bases for federal jurisdiction, including federal

question jurisdiction under 28 U.S.C. § 1331 and exclusive federal jurisdiction under NFIA §

4072. The [c]ourt agrees that federal question jurisdiction under § 1331 exists over plaintiffs'

claims for a refund of SFIP premiums.") Roybal v. Los Alamos Nat'l. Bank, 375 F. Supp. 2d

1324, 1329 (D.N.M. 2005) ("Federal common law, rather than state contract law, governs SFIP

interpretation . . . . 'Thus, a complaint alleging breach of a[ ] SFIP satisfies § 1331 by raising a

substantial federal question on its face.'")  (quoting Newton v. Capital Assurance Co., 245 F.3d

1306, 1309 (11th Cir. 2001)); Southpointe Villas Homeowners Ass'n, Inc. v. Scottish Ins.

Agency, Inc., 213 F. Supp. 2d 586, 593 (D.S.C. 2002) ("Consequently, Plaintiff's claims involve

a federal question such that the Court has proper jurisdiction pursuant to Section 1331, because

the interpretation of a federal policy potentially places federal funds at risk, giving rise to a

uniquely federal interest so important that the "federal common law" should supplant state

law."); Jamal v. Travelers Lloyds of Texas Ins. Co., 97 F. Supp. 2d 800, 805 (S.D. Tex. 2000)

("Thus, to the extent that Jamal's claims are based on or involve the interpretation of the SFIP,

they present questions of federal law sufficient to establish federal question jurisdiction under 28

U.S.C. § 1331.").

     Accordingly, the Court finds that there is federal question jurisdiction pursuant to 28

U.S.C. § 1331 over the Plaintiff's breach of contract claim as against Foremost, the WYO

insurer.  However, the Plaintiff's claims against Fairmont, at issue in the present motion, do not

raise a federal question because Fairmont is an insurance broker, not a WYO insurance carrier.

Thus, the alleged broker agreement between Farimont and the Plaintiff will not be governed by

FEMA regulations or federal regulations. Rather, as described below, the broker agreement will be governed by New York law. Moreover, the Plaintiff alleges solely common law and New York state law claims against Fairmont.

However, the Court can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiff's state law claims against Fairmont provided that these claims "form part of the same case or controversy" as the federal claim alleged in the complaint – namely, the claim against Foremost for breach of the SFIP. See Webster v. Wells Fargo Bank, N.A., No. 08 CIV. 10145 , 2009 WL 5178654, at *4 (S.D.N.Y. Dec. 23, 2009) ("[T]he exercise of supplemental jurisdiction is proper where pendent state-law claims 'form part of the same case or controversy' as the federal claims in the complaint.") (citing Caiola v. Citibank, N.A., New York, 295 F.3d 331 (2d Cir. 2002)). To determine whether state law claims "form part of the same case or controversy" as federal claims, a court must ask if "the facts underlying the federal and state claims substantially overlapped . . . . 'This is so even if the state law claim is asserted against a party different from the one named in the federal claim.'"Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)).

In the instant case, the Plaintiff asserts common law claims against Fairmont for breach of contract and negligence and a claim against Fairmont under NYGBL § 349 for deceptive and misleading consumer practices. (Compl. at ¶ 25–64.) Although these claims are labelled differently, they are premised on the same basic allegation — namely, that Fairmont breached a duty to the Plaintiff, contractual or otherwise, by failing to procure adequate flood insurance coverage for the Plaintiff. (See Compl. at ¶¶ 36, 42, 48, 58.) The Court finds the question of whether Fairmont procured adequate flood insurance is factually intertwined with the Plaintiff's

federal claim against Foremost for allegedly improperly denying insurance coverage under the SFIP. Accordingly, the Court finds that the Plaintiff's state law claims against Fairmont arise from the same nucleus of operative facts as the federal claims against Foremost, and, as such, the Court will exercise supplement jurisdiction over those claims. See, e.g., Jamal v. Travelers Lloyds of Texas Ins. Co., 97 F. Supp. 2d at 806 ("Hence, as jurisdiction over [the plaintiff's] flood insurance claims is exclusively federal and his claims under the homeowners' insurance policy arise out of the same nucleus of operative facts as his claims under the flood insurance policy, it is logical to try these claims together.").

## C. Choice of Law

Before reaching the merits of the parties' arguments, the Court must first decide what law should be applied to the Plaintiff's common law claims against Fairmont for breach of contract and negligence. Where, as here, the court exercises supplemental jurisdiction over a party's state law claims, the Court applies New York choice of law rules. D'Amato v. Five Star Reporting, Inc., No. 12-CV-3395 (ADS), 2015 WL 248612, at *9 (E.D.N.Y. Jan. 17, 2015) (Spatt, J) ("Where, as here, the court exercises supplemental jurisdiction over the parties' state law claims and counterclaims, the court applies New York choice of law rules.") (citing Bass v. World Wrestling Fed'n Entm't, Inc., 129 F.Supp.2d 491, 503 (E.D.N.Y.2001)); see also Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state.") (citation omitted).

"'Under New York choice-of-law rules, the first step of the analysis is to determine whether there is a substantive conflict between the laws of the relevant choices.'" Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP, 623 F. Supp. 2d 504, 509 (S.D.N.Y. 2009) (citing

Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, 446 F.Supp.2d 163, 191 (S.D.N.Y.2006)). However, in the absence of a substantive conflict, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004); see also United Merch. Wholesale, Inc. v. IFFCO, Inc., No. 13-CV-4259 (ADS), 2014 WL 4639138, at *10 (E.D.N.Y. Sept. 15, 2014) (same).

In the instant case, neither party asserts that any other law should be applied other than New York law. Moreover, the Court notes that both Fairmont and the Plaintiff appear to operate businesses in New York and the property at issue is located New York. Thus, the Court will apply New York law to the Plaintiff's common law breach of contract and negligence claims against Fairmont. See Interstate Foods, Inc. v. Lehmann, No. 06 CIV. 13469(JGK), 2008 WL 4443850, at *2 (S.D.N.Y. Sept. 30, 2008) ("In this case, although the parties dispute whether the laws of New York or New Jersey should apply, neither party has asserted that the laws of New York and New Jersey are materially different with respect to a claim of fraud against; a corporate officer nor made a substantive argument why either would be prejudiced by applying New York law to this claim. Therefore, the Court will apply New York law to the plaintiff's first claim.").

**D. As to Plaintiff's Breach of Contract Claims**

In its first and third causes of action, the Plaintiff asserts that Fairmont breached its broker agreement with the Plaintiff. In particular, the Plaintiff alleges that "Fairmont had a duty to procure the requested specific [flood insurance] coverage as [the] Plaintiffs [sic] broker and to the extent coverage is denied Fairmont breached its duty and contract to procure insurance coverage," Compl. at ¶ 36. (See also Compl. at ¶ 48) ("Fairmont has a duty to procure the

specific requested coverage as [the] Plaintiff's broker and to the extent the coverage is denied Fairmont breached its duty and contract to procure the insurance coverage.").  Since both claims rely on similar allegations, the Court will consider them together.

Under New York law, to make out a viable claim for breach of contract, a Plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)); see also Ahluwalia v. St. George's Univ., LLC, No. 14-CV-3312 (ADS), 2014 WL 6674615, at *8 (E.D.N.Y. Nov. 25, 2014) (Spatt, J) (same) (internal quotation marks and citations omitted).

The Plaintiff alleges only that a general agreement existed between the Plaintiff and Foremost to procure flood insurance for the Plaintiff.  The complaint does not attach a copy of any agreement; allege what obligations any purported agreement imposed on Fairmont; or even what the Plaintiff paid to Fairmont in consideration for its efforts to procure flood insurance for the Plaintiff.

However, even without specific allegations as to the content of an agreement, courts have found insurance brokers liable for failure to procure adequate insurance coverage under a breach of contract theory.  For example, in Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc., No. 3:05-CV-424 (RNC), 2006 WL 544513, at *1 (D. Conn. Mar. 3, 2006), the plaintiff insured requested that an insurance broker procure insurance coverage that provided for replacement costs for its buildings in an amount over $5 million.  The broker procured insurance for the Plaintiff that provided far less coverage.  Id.  The Plaintiff's buildings were damaged in a fire, and the insurance company denied the Plaintiff's claim.  Id.  The court denied the broker's

motion to dismiss the Plaintiff's breach of contract claim because "[t]he complaint in this action alleges, expressly or by fair implication, that the defendants specifically agreed to procure from [the plaintiff] blanket coverage, on a replacement cost basis, for all the plaintiffs' facilities in Connecticut and Rhode Island, then failed to do so." Id. at 2; see also Long Island Lighting Co. v. Steel Derrick Barge FSC 99, 725 F.2d 839, 841 (2d Cir. 1984) ("Under New York law, a party who has engaged a person to act as an insurance broker to procure adequate insurance is entitled to recover damages from the broker if the policy obtained does not cover a loss for which the broker contracted to provide insurance, and the insurance company refuses to cover the loss.") (collecting cases).

Here, unlike the plaintiff in Shetucket Plumbing Supply, the Plaintiff was not denied coverage because Fairmont procured the wrong type of coverage. Rather, Foremost and FEMA denied the Plaintiff coverage because, allegedly, the Plaintiff's policy did not become effective until November 2, 2012, several days after the Plaintiff suffered flood-related damages due to SuperStorm Sandy. (Sklar Decl., Ex. C.) In its decision, FEMA noted that under the NFIP Flood Insurance Manual, the Plaintiff's flood insurance policy could not become effective until it closed the loan transaction with Westchester Bank. (Id.). Therefore, FEMA concluded that although the Plaintiff was issued a policy with an effective date of October 25, 2012, its policy did not become effective until November 2, 2012. (Id.) Thus, the denial of coverage appears to be attributable to actions of the Plaintiff and the Westchester Bank because they had control over the issue of when the loan transaction closed; not Fairmont. To the extent that the Plaintiff disagrees with the decision of Foremost to deny it coverage, then that claim is properly addressed to Foremost, the insurance carrier, not to Fairmont, the insurance broker. Here, Fairmont was retained to procure flood insurance for the Plaintiff, and it did so. Accordingly, the Court finds

that the Plaintiff has failed to plausibly allege that Fairmont breached its agreement to procure flood insurance for the Plaintiff and dismisses Plaintiff's first and third causes of action for breach of contract as against Fairmont.

**E. As to Plaintiff's Negligence Claim**

Under New York law, in order to recover on a claim for negligence, a plaintiff must show "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 428 (2d Cir. 2013) (quoting Akins v. Glens Falls City School District, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531 (1981)).

With respect to the first element, "[t]he existence of a duty is an essential element of a negligence claim because, '[i]n the absence of a duty, as a matter of law, no liability can ensue.'" Pasternack v. Lab. Corp. of Am., 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (quoting Farash v. Cont'l Airlines, Inc., 574 F.Supp.2d 356, 367 (S.D.N.Y. 2008)); see also McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997) (same). "'Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists.'" Drake v. Lab. Corp. of Am. Holdings, No. 02CV1924 (FB)(RML), 2007 WL 776818, at *2 (E.D.N.Y. Mar. 13, 2007) (quoting Darby v. Compagnie Nat'l Air France, 96 N.Y.2d 343, 347 (2001)); see also Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) ("The question of the existence and scope of an alleged tortfeasor's duty 'is, in the first instance, a legal issue for the court to resolve.'") (quoting Waters v. New York City Hous. Auth., 69 N.Y.2d 225, 229, 513 N.Y.S.2d 356, 505 N.E.2d 922 (1987)). In particular, "[i]dentifying the scope of an alleged tortfeasor's duty is "not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing

socioeconomic policies and sometimes contractual assumptions of responsibility.'" Alfaro v.

Wal-Mart Stores, Inc., 210 F.3d at 114 (quoting Basso v. Miller, 40 N.Y.2d 233, 241, 386

N.Y.S.2d 564, 352 N.E.2d 868 (1976)).

In the present case, the Plaintiff argues that Fairmont had a duty to inform the Plaintiff

that the SFIP would not go into effect until after the Plaintiff closed its mortgage transaction with

Westchester Bank.  (The Pl.'s Opp'n Mem. of Law at 12–20.)  The Court disagrees.

Generally, under New York law insurance brokers have a "common law duty to obtain

requested coverage for their clients within a reasonable time or inform the client of the inability

to do so."  GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 386 (2d Cir.

2006) (quoting Murphy v. Kuhn, 90 N.Y.2d 266, 269-70, 682 N.E.2d 972 (1997)).  New York

courts have been especially reluctant to impose additional duties on insurance brokers, such as

the duties of trust and confidence imposed on professionals like lawyers or engineers:

> Generally, the law is reasonably settled on initial principles that insurance agents
> [in New York] have a common-law duty to obtain requested coverage for their
> clients within a reasonable time or inform the client of the inability to do so;
> however, they have no continuing duty to advise, guide or direct a client to obtain
> additional coverage. Notably, no New York court has applied [a] 'special
> relationship' analysis to add such continuing duties to the agent-insured
> relationship.

GlobalNet Financial.Com, Inc., 449 F.3d at 386 (quoting Murphy, 90 N.Y.2d at 269-70, 682

N.E.2d 972); see also Chase Scientific Research, Inc. v. NIA Grp., Inc., 96 N.Y.2d 20, 30, 749

N.E.2d 161, 167 (2001) ("Moreover, as this Court recently made clear, an insurance agent has a

common-law duty to obtain requested coverage, but generally not a continuing duty to advise,

guide or direct a client based on a special relationship of trust and confidence.").

In <u>Voss v. Netherlands Ins. Co.</u>, 22 N.Y.3d 728, 735, 985 N.Y.S.2d 448, 452 (2014), the New York Court of Appeals had identified "three exceptional circumstances" "that may give rise to a special relationship, thereby creating an additional duty of advisement:"

> '(1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on[.]'

<u>Voss v. Netherlands Ins. Co.</u>, 22 N.Y.3d 728, 735, 985 N.Y.S.2d 448, 453 (2014) (quoting <u>Murphy</u>, 90 N.Y.2d at 272, 660 N.Y.S.2d 371, 682 N.E.2d 972)).

In <u>Voss</u>, the New York Court of Appeals reversed the Supreme Court's decision to grant summary judgment for the defendant-insurance broker on the plaintiff's negligence claim. <u>Id.</u> at 736. The court found that the Plaintiff had submitted enough evidence to create a material issue of fact as to the existence of a special relationship requiring an additional duty of advisement. <u>Id.</u> at 735. In particular, the court pointed to testimony by the Plaintiff that she questioned the broker as to whether the broker was procuring the proper amount of insurance for its building and that the broker "assured her that it was adequate based on his review of her business finances as well as the layout of the building." <u>Id.</u> Further, the Plaintiff testified that the broker "repeatedly pledged that [it] would review coverage annually and recommend adjustments as her businesses grew." <u>Id.</u>

In <u>Voss</u>, the Court of Appeals favorably cited another decision by the New York Court of Appeals. <u>Murphy v. Kuhn</u>, 90 N.Y.2d 266, 270, 682 N.E.2d 972, 974 (1997). There, the Court of Appeals affirmed a summary judgment order dismissing the Plaintiff's negligence claim against an insurance broker. <u>Id.</u> at 268. The court rejected the plaintiff's argument that a special relationship between the Plaintiff and an insurance broker gave rise to a duty on the part of the

broker to disclose additional information to the Plaintiff as to "possible additional coverage needs."  Id.  The court reasoned that there is "no indication that [the plaintiff] ever inquired or discussed with [the insurance broker] any issues involving the liability limits of the automobile policy.  Such lack of initiative or personal indifference cannot qualify as legally recognizable or justifiable reliance."  Id. at 271.

Here, as in Murphy, the Plaintiff does not make any allegations that warrant a finding that Plaintiff and Foremost had the kind of special relationship that courts have required to impose duties beyond the common law duty to procure the requested insurance.  For example, there are no allegations by the Plaintiff that Fairmont "repeatedly pledged that [it] would review coverage annually and recommend adjustments as her businesses grew," as the insurance broker in Voss did.  See Voss, 22 N.Y.3d at 736.  Other than a conclusory allegation that the Plaintiff had a "long term relationship" with Fairmont, there are no allegations that suggest that the Plaintiff enjoyed anything other than an ordinary consumer-agent insurance relationship with Fairmont. See Murphy, 90 N.Y.2d at 271, 682 N.E.2d 972 ("As a matter of law, this record does not rise to the high level required to recognize the special relationship threshold that might superimpose on defendants the initiatory advisement duty, beyond the ordinary placement of requested insurance responsibilities. Rather, the record in the instant case presents only the standard consumer-agent insurance placement relationship, albeit over an extended period of time.").

The Plaintiff also argues that Fairmont had a duty to warn the Plaintiff that the certificate of insurance provided by Fairmont to the Plaintiff, which lists the effective date of the insurance policy as October 25, 2012, was incorrect.  (Compl. at ¶ 62.)  However, the terms of the certificate of insurance provided by Fairmont to the Plaintiff made clear that the Plaintiff could not rely on it:

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED
AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS . . .
. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A
CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED
REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

(Compl., Ex. H.)  Thus, the Court is not persuaded that this document gave rise to a special duty

of disclosure on the part of the broker Fairmont to correct the effective date on its certificate of

insurance, especially, where, as here, the Plaintiff makes no allegation that **it** asked Fairmont for

information about when its policy became effective.  See Murphy, 90 N.Y.2d at 271, 682 N.E.2d

972 ("In fact, there is no indication that [the plaintiff] ever inquired or discussed with [the

insurance broker] any issues involving the liability limits of the automobile policy.  Such lack of

initiative or personal indifference cannot qualify as legally recognizable or justifiable reliance.").

Indeed, the Plaintiff received a revised policy declaration from Foremost following the closing

noting that the effective date of its policy was November 2, 2012, and thus, there appear to have

been no need for Fairmont to correct the certificate of insurance.  (Sklar Decl., Ex. D.)

Finally, even assuming that there was a duty on the part of Foremost to inform the

Plaintiff of the provision in the NFIP Manual impacting the effective date of the SFIP,

Fairmont's purported breach of that duty did not cause Foremost and FEMA to deny coverage to

the Plaintiff.  As described above, pursuant to the NFIP Manual, the Plaintiff's flood insurance

policy could only become effective after the Plaintiff closed its mortgage with Westchester Bank

on the Island Park property.  Fairmont, as a flood insurance broker, had no control over when the

Plaintiff's loan with the Westchester Bank would close.  Thus, the delay in coverage which

resulted in Foremost denying the Plaintiff's claim cannot plausibly be attributed to any act of

Fairmont.  Accordingly, the Court finds that the Plaintiff fails to state a negligence claim against

Fairmont. See GlobalNet Financial.Com, Inc., 449 F.3d at 388 ("[The plaintiff] is unable to

prevail on its claims because [the insurance broker] was not the cause of the cancellation of coverage. The Financing Agreement between [the insurance carrier] and [insured], which [the insurance broker] was not a party to, set forth [the carrier's] right to cancel [the plaintiff's] coverage for non-payment of premiums in explicit terms . . . . It was [the plaintiff's] negligence that caused the cancellation of the insurance coverage.").

## F. As to Plaintiff's Claim under New York Consumer Protection Law

NYGBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349 (McKinney). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)); see also In re Scotts EZ Seed Litig., No. 12 CV 4727 (VB), 2013 WL 2303727, at *10 (S.D.N.Y. May 22, 2013) (same).

The Plaintiff does not provide any allegations that could plausibly establish the first element of a NYGBL § 349 claim. "'To show consumer-oriented conduct, [the] [p]laintiff would have to 'demonstrate that the acts or practices [complained of] have a broader impact on consumers at large.'" Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995); see also Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) ("It is clear that 'the gravamen of the complaint must

be consumer injury or harm to the public interest.'") (quoting <u>Azby Brokerage, Inc. v. Allstate Ins. Co.</u>, 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y. 1988)).

"'The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.'" <u>Gottlieb Dev. LLC v. Paramount Pictures Corp.</u>, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) (quoting <u>U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.</u>, No. 04 Civ. 6189 (JFK), 2008 WL 3906889, at *18 (S.D.N.Y. Aug. 21, 2008)). Significantly, "[p]rivate transactions not of a recurring nature or without ramifications for the general public do not fall within the purview of section 349." <u>Id.</u> (citing <u>Netzer v. Continuity Graphic Assocs.</u>, 963 F.Supp. 1308, 1323 (S.D.N.Y. 1997)).

In the instant case, the Plaintiff has not alleged any facts that support the claim that it has been harmed by Fairmont's conduct, let alone that Fairmont has misled the public at large. Accordingly, the Plaintiff's claim under section 349 of the NYGBL is dismissed. <u>See, e.g., Gottlieb Dev. LLC</u>, 590 F. Supp. 2d at 637 (S.D.N.Y. 2008) ("[The plaintiff] has not alleged any facts that support the claim that it has been harmed by [the defendant's] conduct, much less to support the proposition that the public at large has been misled. Although Gottlieb insists that Paramount's conduct has ramifications for consumers at large, it has not furnished anything more than conclusory and speculative allegations about how the public will be deceived as to the affiliation or endorsement of its products. Accordingly, Gottlieb's claim under section 349 of the New York General Business Law is dismissed."); <u>Vitolo v. Mentor H/S, Inc.</u>, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006) aff'd, 213 F. App'x 16 (2d Cir. 2007) (dismissing section 349 claim because "[t]he Complaint focuses almost entirely on the losses suffered by [the] [p]laintiff and his business, rather than to consumers or [the] [p]laintiff's patients.").

**III. CONCLUSION**

For the foregoing reasons, it is hereby ordered that the Fairmont's motion is granted in its

entirety and the Plaintiff's claims as to Fairmont are dismissed.  Accordingly, the Plaintiff's sole

remaining cause of action is a breach of contract claim against Foremost.

The Clerk of Court is directed to terminate Fairmont from this action and amend the

caption consistent with this Order.


**SO ORDERED.**
Dated: Central Islip, New York
February 11, 2015



        */s/ Arthur D. Spatt*
        ARTHUR D. SPATT
        United States District Judge