**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LONG BEACH ROAD HOLDINGS, LLC,

                    Plaintiff,           **MEMORANDUM OF**
                                                   **DECISION & ORDER**
        -against-               2:14-cv-01801 (ADS)(AYS)

FOREMOST INSURANCE COMPANY,

                    Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Michael J. Khader P.C.**
*Co-Counsel for the Plaintiff*
733 Yonkers Ave, Suite 200
Yonkers, NY 10704
        By: Michael John Khader, Esq.,

**The Law Offices of Michael J. Mauro, Esq., P.C.**
*Co-Counsel for the Plaintiff*
c/o WSA, 1 Raddison Plaza, 8th Floor
New Rochelle, NY 10801
        By:    Michael James Mauro, Esq., Of Counsel.

**Maroney O Connor LLP**
*Attorneys for the Defendant*
11 Broadway Suite 831
New York, NY 10004
        By:    Michael Raymond Frittola, Esq.,
                   Ross T. Herman, Esq.,
                   Yifei He, Esq., Of Counsel.

**SPATT, District Judge**:

       This case is scheduled for trial on May 20, 2019 regarding the claim of plaintiff Long Beach Road Holdings, LLC (the "Plaintiff") that defendant Foremost Insurance Company (the "Defendant") breached a contract between the parties by denying the Plaintiff reimbursement under an insurance policy issued through a federally subsidized flood insurance program.

Presently before the court is a motion *in limine* by the Defendant seeking an order barring the introduction of certain evidence at trial pursuant to Federal Rule of Evidence ("Rule") 401. For the following reasons, the Court grants the Defendant's motion, in part, and denies the Defendant's motion, in part.

## I. BACKGROUND

**A. OVERVIEW OF THE RELEVANT STATUTORY FRAMEWORK.**

The National Flood Insurance Act of 1968 ("NFIA" or the "Act"), 42 U.S.C. §§ 4001–4127, was enacted with a legislative "recogni[tion] that 'many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions,'" *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174 (2d Cir.2012) (quoting 42 U.S.C. § 4001(b)). Thus, under the Act, "'the federal government provides flood insurance subsidies and local officials are required to adopt and enforce various management measures.'" *Id.* (quoting *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 183 (2d Cir. 2006)).

Within the purview of the Act is a program known as the National Flood Insurance Program ("NFIP"), which is administered by the Federal Emergency Management Agency ("FEMA"), and is "supported by taxpayer funds, which pay for claims that exceed the premiums collected from the insured parties." *Jacobson*, 672 F.3d at 174 (citing *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 n. 2 (3d Cir.1998)). Under the NFIP, "FEMA is authorized to promulgate regulations [1] as to 'the general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage,' and [2] as to 'the general method or methods by which proved and approved claims for losses under such policies may be adjusted and paid.'" *Moffett v. Computer Scis. Corp.*, 457 F.Supp.2d 571, 573 (D. Md. 2006) (citing *Battle v. Seibels Bruce Ins.*

2

*Co.*, 288 F.3d 596, 599 (4th Cir.2002)). "In other words, FEMA writes the policies and makes the rules as to claims made under them." *Id.*

Relevant here, FEMA established the precise terms and conditions of coverage available under the NFIP in the form of a so-called Standard Flood Insurance Policy ("SFIP"). *See* 44 C.F.R. § 61.13 (codifying the terms and conditions of the SFIP); *see also Van Holt*, 163 F.3d at 165–66 ("FEMA fixes the terms and conditions of the flood insurance policies, which, barring the express written consent of the Federal Insurance Administrator, must be issued without alteration as a Standard Flood Insurance Policy"); *Moffett*, 457 F.Supp.2d at 573(noting that "[t]he terms and conditions of coverage are fixed by FEMA regulation in the form of [an SFIP] and do not vary ..."); *Eodice v. Selective Ins. Co. of Am.*, No. 08–cv–151, 2010 U.S. Dist. LEXIS 13090, at *2 (D.N.J. Feb. 8, 2010) (same).

"In 1983, FEMA created the Write Your Own ["WYO"] program, which allows private insurance companies to issue and administer SFIPs in their own names as 'fiscal agent[s] of the Federal Government.'" *Ravasio v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 81 F.Supp.3d 274, 277 (E.D.N.Y.2015) (Spatt, J.) (quoting 42 U.S.C. § 4071(a)(1)). Accordingly, private insurance companies may "write their own" federally-underwritten SFIPs, *Van Holt*, 163 F.3d at 165, but in doing so, assume "significant administrative responsibilities under the NFIP," *Moffett*, 457 F.Supp.2d at 574. "For the policies they issue, [WYO companies] are responsible for the adjustment, settlement, payment and defense of all claims." *Id.*; *see* 44 C.F.R. §§ 62.21(a), 62.23. "The Government, in return, ... reimburse[s] the WYO insurer for claims paid under the SFIPs and related litigation costs, and pay[s] the WYO insurer a flat 3.3% commission on claims paid." *Eodice*, 2010 U.S. Dist. LEXIS 13090, at *2. Thus, under the WYO program, "the private insurance companies administer the federal program," but ultimately, "'it is the Government, not

3

the companies, that pays the claims.'" *Ravasio*, 81 F.Supp.3d at 277 (quoting *Jacobson*, 672 F.3d at 175); *see Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 770 (8th Cir.2013) (noting that "WYO insurers deposit SFIP premiums in the United States Treasury and pay SFIP claims and litigation costs with federal money") (citations omitted).

The NFIA further creates a private right of action for insureds against the administrator of the SFIP to be brought in federal court within one year after the cause of action accrues:

> [U]pon the disallowance by the Administrator of any such claim [for losses covered by an SFIP], or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072; *see Moffett*, 457 F.Supp.2d at 575 (explaining that "[if] an insured is dissatisfied with the handling of a claim, he or she may ... bring an action in federal district court") (citing 44 C.F.R., Part 61, App. A(1), Art. VII(P); 42 U.S.C. § 4072).

**B. THE RELEVANT FACTS.**

On October 25, 2012, the Defendant, a WYO insurance carrier, issued an SFIP to the Plaintiff providing for $450,000 in flood coverage for a commercial property located in Island Park (hereinafter, the "Policy"). The Plaintiff obtained the Policy in conjunction with a loan on the property. The Defendant furnished the Plaintiff with a number of documents, including a set of declarations and a certificate of insurance, indicating that the Policy became effective on October 25, 2012. In addition, the Plaintiff was billed for and paid a $2,192 premium in connection with the Policy.

On October 29, 2012, flooding caused by SuperStorm Sandy damaged the Plaintiff's property in an estimated amount of $262,205.78. The Defendant sent the Plaintiff an advance

payment of $40,000 for the claimed damage but refused to fully reimburse the Plaintiff because it believed that the NFIP regulations specify that the Policy was not legally effective at the time of the loss.

On March 20, 2014, the Plaintiff filed an action for breach of contract seeking to recover damages for the full amount of losses claimed under the Policy. The Defendant counterclaimed seeking return of the $40,000 advance payment it alleges the Plaintiff improperly received.

On April 25, 2019, the Defendant filed the instant motion *in limine* seeking to preclude the Plaintiff from introducing evidence, testimony, or argument that the Policy was in lawful force and effect prior to the date prescribed by NFIP regulations.

## II. DISCUSSION

A. THE STANDARD ON MOTIONS *IN LIMINE*.

"The purpose of a motion in limine is to facilitate an efficient trial 'by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Pavone v. Puglisi*, No. 08-cv-2389, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citation omitted). "The Federal Rules of Evidence ... provide that '[i]rrelevant evidence is not admissible' and define 'relevant evidence' as that 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Romanelli v. Long Island R. Co.*, 898 F. Supp. 2d 626, 629 (S.D.N.Y. 2012) (quoting Fed. R. Evid. 401, 402). However,

relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusion of the issues, [or] misleading the jury." Fed. R. Evid. 403.

**B. APPLICATION TO THE FACTS.**

The Defendant moves to exclude a litany of evidence on the ground that they are irrelevant in light of NFIP regulations. Specifically, the Defendant contends that the Court should prohibit the Plaintiff from introducing essentially all of the documents underlying its claim, because the relevant regulations dictate that an SFIP obtained in connection with a loan cannot become effective until the loan closes, and in this case, the loan did not close until November 2, 2019. As it will explain, the Court concurs with the Defendant's reading of the regulations but disagrees that exclusion is the proper remedy.

Before proceeding to the substance of the Defendant's relevance challenge, the Court must first construe the applicable regulations. The Policy, which is an SFIP, is "more than a contract: it is also a regulation of [FEMA], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policy holders." *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir. 2001). The Defendant, as a WYO carrier, administers the Policy as a "fiscal agent[] of the United States." 42 U.S.C. § 4071(a)(1). Accordingly, the Defendant "must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent." *Jacobson*, 672 F.3d at 175. Put another way, the Defendant has "no authority to alter, waive, or amend the terms of the SFIP without express written consent from the federal insurance administrator." *M & K Rest. LLC v. Farmers Ins. Co.*, 29 F. Supp. 3d 1204, 1215 (E.D. Ark. 2014); *accord* 44 C.F.R. § 61.13(d) ("The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said

6

documents shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator.")

Relevant here, the NFIP regulations prescribe the date upon which flood insurance coverage obtained in connection with a loan begins:

> Where the initial purchase of flood insurance is in connection with the making, increasing, extension, or renewal of a loan, the coverage with respect to the property which is the subject of the loan shall be effective as of the time of the loan closing, provided the written request for the coverage is received by the NFIP and the flood insurance policy is applied for and the presentment of payment of premium is made at or prior to the loan closing.

44 C.F.R. § 61.11(b). Moreover, the regulations prohibit oral binders and specify that written binders only have legal force if issued with express authorization of the Federal Insurance Administrator. *See* 44 C.F.R. § 61.13(e) ("No oral binder or contract shall be effective. No written binder shall be effective unless issued with express authorization of the Federal Insurance Administrator.").

In the Court's view, it is apparent from these regulations that the only permissible effective date for the Policy is the date the Plaintiff closed the loan on the covered property. Put another way, the Plaintiff as a matter of law cannot argue that the Policy became effective at an earlier date. *See Burks v. Prudential Ins. Co. of N. Am.*, 388 F. App'x 387, 389 (5th Cir. 2010) ("As a matter of law, the SFIP became effective on the date of the loan closing."); *Bull v. Allstate Ins. Co.*, 649 F. Supp. 2d 529, 538 (W.D. La. 2009) ("The purchase of the Bull's flood insurance policy for the 2435 Egret Street property was made in connection with the renewal of a loan. 44 CFR § 61.11(b) dictates that SFIP's 'made in connection with the renewal of a loan ... shall be effective at the time of closing ...' As such, the SFIP for the 2435 Egret Street property became effective in November 2005 when the loan closing took place.").

7

The Plaintiff provides four distinct arguments for an earlier effective date. None persuade the Court to disregard the plain and clear text of the regulations.

First, the Plaintiff contends that an insurer forms a valid contract with an insured when the insurer "issues a policy and accepts payment for insurance coverage under that policy," thereby "agree[ing] to assume the risks enunciated in the policy." *Gerrish Corp. v. Universal Underwriters Ins. Co.*, 947 F.2d 1023, 1028 (2d Cir. 1991). Although the Plaintiff may be correct under general principles of insurance law, they do not apply to an SFIP, which's terms are set by federal regulations and not state law. To the extent state law applies to the Policy, it cannot override the express terms of a federal regulation. *See Copeland v. Allstate Ins. Co.*, No. 14-cv-1556, 2017 WL 10088571, at *5 (E.D.N.Y. Jan. 27, 2017) ("Under the NFIP regulations and the SFIP, all disputes related to the handling of a SFIP claim are 'governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.'" (quoting 44 C.F.R. § Pt. 61, App. A(1) Art. IX)).

Second, the Plaintiff argues that the issuance of a certificate of insurance estopped the Defendant from denying coverage. *See Chartis Seguros Mex., Lopez v. Rutgers Cas. Ins. Co.*, 298 F. Supp. 3d 503, 515 (EDNY 2018) ("[A]n insurance company that issues a certificate of insurance naming a particular party as an additional insured may be estopped from denying coverage to that party where the party reasonably relies on the certificate of insurance to its detriment."). However, "the Supreme Court has made clear that 'judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.'" *Jacobson*, 672 F.3d at 177. (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)).

The Plaintiff suggests the existence of an exception to the general rule in cases of affirmative misconduct by the WYO insurer. *See Diamond v. Federal Emergency Management Agency*, 689 F. Supp 163, 169–70 (E.D.N.Y. 1998). This argument is unavailing in light of pertinent Second Circuit case law. Although the Second Circuit has not affirmatively ruled WYO insurers may never be estopped, it recognized in *Jacobson v. Metro Property & Casualty Insurance Company*, 672 F.3d 171 (2d Cir. 2012), that "[i]t is well established . . . that the actions of an insurance company under the NFIP cannot waive requirements set by the government or operate as an estoppel against the government." *Id.* at 177 (citing *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998)). The Court's review of post-*Jacobson* authority reveals that the Plaintiff's attempt to invoke estoppel to make the Policy effective at an earlier date than required by regulation is without basis in law, regardless of whether affirmative misconduct occurred. *See Kannry v. Liberty Mut. Grp., Inc.*, No. 14-cv-1539, 2015 WL 10641776, at *5 (E.D.N.Y. Dec. 23, 2015) (describing estoppel theory as an "attempt to end-run the requirements of the NFIP . . . without basis"); *Bagley v. New York Cent. Mut. Fire Insurance Co.*, No. 13-cv-00241, 2015 WL 12556146, at *6 n.5 (N.D.N.Y. June 17, 2015) ("Courts have held that FEMA and its agents may not be estopped from asserting proof of loss requirements.").

Third, the Plaintiff claims that the judgment in this case may not be satisfied through funds from the United States Treasury, erasing the bar against invoking estoppel, because the Defendant acted with negligence and/or outside the scope of its arrangement with FEMA. However, the authority relied upon by the Plaintiff concludes that "FEMA is presumed to pay the WYO insurer's litigation expenses and any resulting damages awards." *M & K Rest. LLC*, 29 F. Supp. 3d at 1216. In order to rebut that presumption, the Plaintiff must present evidence that FEMA explicitly notified the Defendant of its intent not to defend or indemnify. *See Dickson v. Am. Bankers Ins.*

*Co. of Fla.*, 739 F.3d 397, 400 (8th Cir. 2014); *Grissom v. Liberty mutual Ins. Co.*, 678 F.3d 397, 401–02 (5th Cir. 2012). As the Plaintiff provided no such evidence, the Court cannot conclude that estoppel is an available theory of recovery.

Fourth, in its pre-trial memorandum, the Plaintiff separately argues that 44 C.F.R. § 61.13(e) permits reliance on binders because there is "no fact in the record that Defendant has cited that establishes the binder was issued without the authorization of the administrator." ECF 92 at 8. However, the Plaintiff misstates the burden imposed by the regulation. The *Plaintiff* must put forward evidence of an "express authorization" from the Federal Insurance Administrator in order for a binder to have effect. Absent such evidence, the Plaintiff cannot rely on the binders here to alter the SFIP. Regardless, the existence of a binder would only relate to the date that the Policy was deemed issued, not the effective date prescribed by the relevant exception to the waiting period in 44 C.F.R. § 61.11(b).

Paying specific attention to the Plaintiff's claim that the Defendant erred by issuing documents showing an October 25, 2012 effective date, the Court notes that the Plaintiff was "charged with the constructive knowledge of the provisions of the SFIP regardless of actual knowledge of what is in the regulations or of the hardship resulting from ignorant innocence." *Larmann v. State Farm Ins. Co.*, No. 03-cv-2993, 2005 WL 357191, at *2 (E.D. La. Feb. 11, 2005); *Fadel v. Nationwide Mut. Fire Ins. Co.*, No. 12-cv-00337, 2013 WL 1337390, at *3 (W.D. Ky. Mar. 29, 2013) ("[I]ndividuals seeking to utilize federal insurance programs are charged with the knowledge of the contours of those programs."). The default rule for newly acquired coverage under an SFIP is that the policy only becomes effective after a 30-day waiting period. *See* 44 C.F.R. § 61.11(c). The Plaintiff only obtained an exception permitting coverage without a waiting period because it purchased its SFIP in connection with a loan. In such cases, SFIPs do not come

into effect until the loan closes. No representations by the Defendant can alter an immutable federal requirement.

With that in mind, the Court will address the Defendant's relevance challenge. All of the documents subject to the Defendant's motion are facially relevant because they are probative to issues of consequence to the determination of the action. At the broadest level, they tend to show facts pertinent to establishing a breach of contract claim. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 188–89 (S.D.N.Y. 2008) (explaining that documents "which might show, for instance, that [the parties] believed a contract existed, appear relevant under the liberal requirements of Rule 401"). More granularly, all of the exhibits relate to one or more of the following issues: whether the Defendant issued the Plaintiff an insurance policy, a fact relevant to determining if a binding contract between the parties existed; whether the Plaintiff obtained the Policy in connection with a loan, a fact relevant to determining the Policy's proper effective date; whether the Plaintiff paid the Policy's premium, a fact relevant to determining the Plaintiff's ability to generally make claims under the Policy; and the amount of loss suffered by the Plaintiff, a fact relevant to calculating damages. Consequently, the Defendant's request to exclude these documents in their entirety is without basis.

On the other hand, the Defendant is correct that the documents are wholly irrelevant to the extent that the Plaintiff intends to reach a conclusion barred by the NFIP regulations. *See United States v. Lewis*, No. 16-cr-00471, 2017 WL 2937606, at *1 (E.D.N.Y. July 6, 2017) (excluding evidence as "irrelevant under Federal Rule of Evidence 402 because, as a matter of law, such evidence could not establish derivative United States citizenship"); *Santrayall v. Burrell*, 993 F. Supp. 173, 177 (S.D.N.Y. 1998) (finding evidence irrelevant and inadmissible because it was "insufficient as a matter of law to serve as the basis of" an affirmative defense and thus "not of

consequence to the determination of this action."). The Court will thus prohibit the Plaintiff from attempting to persuade the jury, through argument or otherwise, that the Policy came into effect before the loan closed.

The Court is mindful that its ruling might significantly impede the Plaintiff's ability to succeed at trial. Although the parties do not stipulate to this fact, it appears from the exhibits attached to the Defendant's motion that the loan closed on November 2, 2012, after the flood damage incurred on October 29, 2012. If the Policy cannot come into effect until the date of the loan's closing, the Plaintiff will likely be unable to recover at trial – *i.e.*, unless the Plaintiff establishes that the loan closed before October 29, 2102 – because its claim will be barred by the "known loss doctrine." *See 84 Albany Ave. Realty Corp. v. Standard Fire Ins. Co.*, 13 F. Supp. 3d 241, 246 (E.D.N.Y. 2014) ("Here, it is undisputed that the flood loss sustained by Plaintiff occurred as a result of Hurricane Sandy on October 29, 2012. It is further undisputed that Plaintiff did not attempt to renew its flood insurance policy until October 30, 2012, the day after its flood loss occurred. . . . Accordingly, Plaintiff's claim is also barred by the known loss doctrine.").

The Court thus gave special consideration to the plainly apparent reality that the Defendant brought the underlying motion to rectify its failure to move for summary judgment in a timely manner. Ordinarily, courts reject outright attempts to obtain a judgment as a matter of law under the guise of a motion *in limine*. *See Broadspring, Inc. v. Congoo, LLC*, No. 13-cv-1866, 2014 WL 7392905, at *8 (S.D.N.Y. Dec. 29, 2014). Motions *in limine* should not "serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself." *TVT Records v. Island Def Jam Music Grp.*, 250 F.Supp.2d 341, 344–45 (S.D.N.Y.2003) (denying as impermissible motions in limine that, "in the guise of addressing limited evidentiary issues, ... would effectively). The Court is particularly concerned that its ruling might reward the

Defendant's lackadaisical approach to this litigation by reaching an, in effect, merits determination. Indeed, it is highly unusual for courts to decide matters of statutory interpretation for the first time in a motion *in limine*, an ill-suited vehicle for making such rulings.

Nonetheless, the Court cannot permit the Plaintiff to attempt to persuade the jury to reach a conclusion prohibited as a matter of law. *See United States v. Simpson*, 929 F. Supp. 2d 177, 198 (E.D.N.Y. 2013) (finding defendant could not introduce evidence related to defense barred "as a matter of law" because such evidence "would confuse the jury and potentially mislead them to concluding that "the defense was valid"). Because the Policy cannot have legal force until the date of loan closing, permitting the jury to entertain factual or argumentative averments to the contrary would run a serious risk of misleading the jury into finding an improper effective date. As a result, the unique circumstances here are distinguishable from the ordinary attempt to obtain a judgment as a matter of law via an evidentiary motion. The plain language of the NFIP regulations tie the Court's hands, notwithstanding the outsized impact of the Court's decision on the potential outcome of the trial.

Therefore, the Court will permit the introduction of the evidence at issue but will establish parameters upon which the Plaintiff may rely on the evidence. The Plaintiff, for instance, may use the evidence subject to the Defendant's motion to attempt to establish necessary elements of its breach of contract claim, such as the existence of a contract, the payment of premiums, and damages. The Plaintiff may not, however, attempt to persuade the jury, through evidence or argument, that the Policy came into effect before the loan closed. Because the parties did not stipulate to the date of the loan closing, the exact effective date of the contract must be determined by the jury. While the Plaintiff may attempt to establish an effective date prior to October 29, 2012,

the Plaintiff cannot do so based upon the Defendant's representations that the policy period began on October 25, 2012.

### III.  CONCLUSION

For the foregoing reasons, the Court grants, in part, and denies, in part, the Defendant's motion *in limine* consistent with guidelines provided in this Opinion.

It is **SO ORDERED**:

Dated: Central Islip, New York

May 17, 2019.

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge
